The School Committee of Providence Township *v.* Tobias Kesler *et al.*

THE SCHOOL COMMITTEE OF PROVIDENCE TOWNSHIP *vs.* TOBIAS
KESLER *et al.*

1. Where issues to be tried by a jury, are tendered by the plaintiff, and such
issues are objected to by the defendant, and others tendered, and the presiding
Judge directs those tendered by the plaintiff to be submitted; *Held,* that
there can be no appeal to the Supreme Court from such preliminary order.

Rules III, IV and V, adopted by the Supreme Court at June Term, 1871, discuss-
ed and fully explained by Pearson, C. J.

Civil action tried before Cloud, Judge, at a Special Term of
Rowan Superior Court, January, 1872.

The complaint alleges that the defendant, Tobias Kesler, by
a deed bearing date November 27th, 1848, conveyed a certain
tract of land in Rowan County, to Samuel Peeler and others,
School Committee of the 38th district of common schools, and
their successors, &c. That the plaintiffs in this suit, in their
corporate capacity, are entitled to the care and custody of said
premises, under an Act of the General Assembly, passed April
12th, 1860, &c., and that they were lawfully possessed of the
said premises at the time of the trespass committed by the de-
fendants. That the defendants, Trexler and Roseman, at the
instigation and request of the defendant Kesler, unlawfully en-
tered upon said premises, and then and there injured a certain
school house situated upon the said premises, by carrying off
the flooring, a number of benches, &c., &c.

Defendants admit the acts complained of and that they were
done at the instance and request of defendant Kesler, who
claimed title to the premises.

At the Special Term aforesaid, the plaintiffs, by their attor-
neys, tendered the following issues of fact to be tried by a jury.

I. Did Tobias Kesler convey the land described in the plead-
ings, to Samuel Peeler and others, school committee, &c.

. II. Were the plaintiffs lawfully possessed of said land at the time of the alleged trespass?

III. Did Roseman and Trexler, defendants, at the instance and request of the other defendant, unlawfully enter, &c?

IV. What damage have plaintiffs sustained by the unlawful acts of the defendants?

Defendants' counsel objected to these issues, and tendered the following:

I. Did the defendant Kesler, on the 27th day of November, 1848, sign, seal and deliver to Samuel Peeler, and others, school committee, &c., a certain paper writing in the words and figures following:　　*　　*　　*　　*

II. Did the defendants Trexler and Roseman, by the command of Kesler, enter upon the premises and despoil the same as alleged?

III. If yes: What is the value of the damage?

Whereupon, His Honor ordered the issues tendered by the plaintiff to be submitted to the jury.

From this order the defendants appealed to the Supreme Court.

*John S. Henderson* for plaintiff.
*W. H. Bailey* and *J. M. McCorkle* for defendants.

PEARSON, C. J. By the common law mode of procedure, the parties made up "the issue" by their pleadings. By the mode of procedure in Courts of Equity, the issues were not eliminated by the bill and answer, as the testimony was all in writing, in exhibits and depositions. The Chancellor could take his own time, if the cause was heard upon bill, answer, exhibits and depositions, and the argument of counsel, and settle for himself "the issues" upon which the case turned.

C. C. P. adopts the mode of procedure in Courts of Equity, by complaint and answer, and " the issues" are not "eliminated by the proceedings."　This in complicated actions gives

rise to much inconvenience, because the trial is by jury upon the *viva voce* test, instead of depositions, which could be perused at leisure; hence very frequently, after the jury is empanelled, and the witnesses are examined, much delay is caused by the discussion and "wrangling" of counsel as to "the issues," which the Judge should submit to the jury, and His Honor is obliged "off hand," to decide upon which issues the case should turn. The consumption of time during the term, in the discussion about "the issues," results in serious damage to suitors of the Court, and upon appeal after verdict and judgment, in many cases, this Court has been compelled to order a *venire de novo*, because some material matter had not been submitted to the jury. Rules III, IV & V, were adopted at June Term, 1871, as a remedy for this evil, by allowing the counsel at the appearance term, if they could agree, otherwise the Judge to settle "the issues," so that when the case was called for trial, there should be no delay, and all that was to be done was to examine the witnesses and take the verdict, after proper instructions from the Court.

It was not intended by these rules to make an entire change in the mode of jury trials heretofore in use, so as to require in every case a special verdict, setting out the *dry facts*, leaving the law to be afterwards declared by the Judge, or to require a special finding of particular questions as dry facts, the legal effect to be afterwards decided by the Judge. C. C. P., section 232 and 223.

Most of "the issues," or questions upon which a case turns, are compounded of both law and fact, with instructions in regard to the law. The only purpose of the rules was to have these issues or questions settled beforehand, to avoid delay and surprise at the trial. Does the deed under which the defendant claims as color of title cover the land in dispute? *Osborn* v. *Johnson* at this term. This involves both law and fact. It was for the Judge to instruct the jury what are the boundaries, and for the jury to find whether these boundaries cover

the land. Did the defendant have a good title to the land? *McKesson* v. *Hennessee*, at this term. It was for the Judge to say what facts the jury must find to entitle the defendants to their verdict. From these two examples, the questions or issues presented in a case, can be easily settled according to the rules. Another instance, indictment for murder, plea, "not guilty." "The issue" is a compound of law and fact. The Judge must instruct the jury, [if they are satisfied that the prisoner killed the deceased, what facts are necessary to constitute murder. So the jury are to decide on the instructions and the evidence, the issues "guilty" or "not guilty."

We presume the judge would not be precluded from presenting other issues in his charge, should it appear by the investigation, that some other matter ought to be passed upon by the jury for the purpose of a decision on the merits, subject of course to his power to allow a continuance to avoid surprise.

Thus it is seen, that the only alternative in practice which was intended to be made by these rules, was to have the issues made up *beforehand*, after due reflection upon the complaint and answer, instead of having it done *after the trial was entered upon*. So the idea of an appeal from this mere preliminary proceeding, is out of the question. Suppose, before the adoption of these rules of practice, the judge had on the trial, refused to submit a certain matter to the jury, could the trial stop, so as to allow an appeal? It might as well be contended that when evidence is ruled out, the trial should stop, until the opinion of the Supreme Court could be had in regard to it, by an appeal. The rule would be rescinded at once, if it had the effect of giving occasion for delay by appeal, where the counsel of the parties shall differ in opinion with His Honor.

Appeal dismissed.

PER CURIAM.                                       Judgment affirmed.